PEASE *vs.* COPP.

Where, by the terms of an executory agreement, the delivery of goods is to be at a specified place, to a specified person, who, as between him and the buyer, is not authorized to inspect the goods, but has a general authority to receive, weigh and forward such goods as the purchaser sends, and goods are in fact received by the agent and by him consigned to another agent of the buyer, at a distant place for sale, the purchaser will be held to have accepted the goods, and is precluded, in the absence of fraud, from subsequently calling in question the quantity, or quality, of the property sold, in an action brought by the vendor, for the contract price.

It *seems* that it is the duty of the purchaser of an article of merchandise which, in its nature, is open to ready inspection, and which is, by the terms of the contract of sale, to be delivered at a specified place, to provide for the inspection of the commodity before it has been transported from the place of delivery, in pursuance of the buyer's directions.

The defendant contracted with the plaintiff for all the cheese the latter should make, in his dairy, during a specified term, the cheese to be delivered to A., an agent of the defendant at D., who had instructions from the defendant to receive such cheese as should be sent to him, and to weigh and forward the same to the defendant's agent or consignee, in New York, for sale. Under this contract a quantity of cheese was received from the plaintiff, by A., and was by him weighed and forwarded to New York in pursuance of the defendant's directions. *Held,* that there was a delivery and acceptance of the cheese. That it was an article that could be inspected, and its quality ascertained; and this should have been done, at A.'s warehouse. And that after the goods had been accepted by the purchaser's agent, and forwarded to New York, it was too late for the defendant to raise any question as to the quality of the cheese.

APPEAL, by the defendant, from a judgment entered upon the report of a referee.

The action was brought to recover a balance of pur-

Pease *v.* Copp.

chase-money claimed as due upon a sale and purchase of a quantity of cheese. The complaint alleged the sale and delivery by the plaintiff to the defendant, at divers times during the summer and fall of the year 1857, of large quantities of cheese, at a specified price per pound. The answer, in addition to a general denial of the alleged contract, and a plea of payment, set up an agreement between the parties that such cheese as should be delivered by the plaintiff should be of a good and merchantable quality, and charged a breach of such agreement, and alleged that the cheese which had been delivered was of little or no value. The answer also contained a plea of accord and satisfaction.

On the hearing before the referee, the plaintiff proved that an executory agreement was entered into, between the parties, in August, 1857, by which the defendant agreed to take, of the plaintiff, such cheeses as he then had on hand, to the number of about seventy, and such others as he should thereafter make in his dairy prior to the 20th day of October of that season ; for all of which the defendant was to pay at the rate of nine cents per pound. The cheese was to be put up in boxes by the plaintiff and to be delivered as soon as it should become four weeks old, at the warehouse of George M. Abell in Dunkirk, the price to be paid on delivery. The cheese was shown to have been taken to the place designated in the contract, in parcels, at different times during the summer and fall of the same year. The last load, consisting of thirty-three boxes, weighing 3,087 pounds, was deposited at the warehouse on the 27th of November, 1857. Abell was present at the time, and gave his receipt in the following form :

" Received from H. G. Pease, in store, for T. D. Copp, thirty-three boxes cheese.     33 boxes, 3,391—304.

Nov. 27, 1857.                    GEO. M. ABELL."

The giving of the receipt in evidence was objected to by the defendant as hearsay evidence, but the objection

was overruled. The cheese was, shortly after delivery, forwarded by Abell to the defendant's consignee in New York for sale; some of it was marked "forward," at the time of delivery, by Abell. The business of Abell was that of a forwarder at Dunkirk. It was admitted by the parties that all of the cheese, excepting the last lot, had been paid for by the defendant at the contract price; and that Abell was the agent of the defendant to receive the cheese. The delivery of the last load was shown to have been delayed by the plaintiff in pursuance of instructions on the part of the defendant. The defendant was extensively engaged as a buyer of butter and cheese in the county of Chautauqua. There never had been any offer to return any part of the cheese delivered.

The defendant then offered to show on a cross-examination of the plaintiff, who had been made a witness in his own behalf, that the quality of the cheese last delivered was bad, and that it had been manufactured after the 1st day of October, a time which the defendant claimed, and offered to prove, was the limit of the period for making cheese under the contract. The plaintiff objected to the evidence, on the ground that an acceptance of the cheese by the defendant had precluded him from objecting to its quantity or quality; and that the offered evidence was therefore inadmissible. The court sustained the objection.

The plaintiff having rested his case, the defendant testified on his part, and introduced other evidence to show, that the contract made between the parties only included the cheese made prior to October 1st. He then made several offers of evidence to which the plaintiff objected, and which the referee finally consented to hear, under a ruling that if he should ultimately decide that the evidence was incompetent it should be considered as excluded by him under the objections made, reserving to the defendant his privilege of exception. The defendant then gave evidence that the last thirty-

Pease *v.* Copp.

three boxes of cheese were badly cured, and a portion of the contents were made after October 1st. That Abell was a forwarder; that his authority was to receive such cheese as the defendant sent him, to weigh it and forward it to its destination; that the defendant got information, in December, 1857, from his consignee in New York, that this lot of cheese which had been sent was unmerchantable; that soon after the receipt of this intelligence, on meeting the plaintiff, he directed his attention to the matter. The plaintiff had called to arrange for the payment of a note and told him to go on and pay the note, and he would do what was right about the cheese. The agency of the consignee in New York was proved to have been nothing more than that of a general commission merchant. The general quality of fall cheese was shown to be inferior to that of summer cheese; and this particular lot was sold, in the April ensuing, for one cent per pound. All of this evidence was heard subject to the objection previously mentioned on the part of the plaintiff, to the effect that an acceptance of the cheese had in fact taken place, and that the private relations and dealings of the defendant with his agents, and the final results of his purchases as profitable or otherwise were irrelevant; and that the conversation with the plaintiff was immaterial for the same reason. The referee decided to exclude the evidence which had been conditionally admitted, and ordered judgment in favor of the plaintiff for $177.83, the price of the thirty-three boxes of cheese, with interest on that amount to the date of the report.

*Obed Edson,* for the appellant. I. The referee erred in finding that the cheese had been accepted by the defendant at the contract price. In a contract for the sale and delivery of an article at a future day, merchantable quality, such as will at least bring the average market price, is always intended and warranted. In executory

sales the rule of *caveat venditor*, and not of *caveat emptor*, applies. (*Howard* v. *Ryckman*, 23 *Wend.*, 350. 9 *Wend.* 28. *Hargous* v. *Stone*, 1 *Selden*, 86.)

. If the article of merchandise sold and delivered under an executory contract is accepted by the purchaser, he is undoubtedly bound to the contract price, (as in *Sprague* v. *Blake*, 20 *Wend.*, 61 ;) otherwise, however, if there is no acceptance under the contract or at the contract price. (17 *Wend.*, 277, 18 *Wend.*, 462–463. *Kings* v. *Paddock*, 18 *Johns. R.*, 141–144.)

The purchaser has always, after the delivery and receipt of merchandise, a reasonable time in which to inspect it, and if within such time he gives notice of the defect there is no waiver of his right to object to the quantity, or quality. (23 *Wend.*, 350. *Ely* v. *O'Leary*, 2 *E. D. Smith*, 355.) .

The facts in this case do not show that there was any inspection or acceptance of the cheese by the defendant, or by Abell, to whom it was delivered. Abell was a mere forwarder, had no authority to inspect, and did not inspect or examine the cheese. The defendant had no knowledge of the character or quality of the article delivered.

II. The question of acceptance is one of fact, depending upon the intention of the buyer, the nature of the goods, the opportunities for inspection, and the varying circumstances of the case. It was a disputed and material question, and the referee should have heard all the evidence bearing upon it. (*See* 2 *Parsons on Contracts*, 324 ; 23 *Wend.*, 350.)

The referee should not have excluded the defendant's testimony as to the value and quality of the cheese.

*James A. Allen*, for the respondent. I. None of the cheese was made by the plaintiff after the contract time had expired. The referee finds as fact, that cheese was to be taken by the defendant to the 20th of October.

Pease *v.* Copp.

II. There was an acceptance of the cheese by the defendant. Receipts were given to the plaintiff by the agent, for the cheese, "as in store for T. D. Copp." It was shipped soon after by the agent to New York, to the defendant's consignee, without objection. There was never any offer to return the cheese. It was sold in March or April, 1858. The acceptance may be by an agent as well as by the principal. (*Sprague* v. *Blake,* 20 *Wend.,* 61.) An acceptance takes place when the buyer performs any act manifesting an intention to retain possession of the goods. (*Hunt* v. *Hecht,* 20 *Eng. L. & E.,* 524, *per Martin, B. 2 Parsons on Cont.,* 324, 327 *n.*) He has no right to even passively retain the goods beyond the time necessary to examine them. (2 *Pars. on Cont.,* 325.) A consignment by the agent to whom delivery is made, to another agent of the defendant, amounts to an acceptance. (*Snow* v. *Warner,* 10 *Met.,* 132.) Acceptance may be inferred from mere lapse of time in not returning the goods. *Bushnell* v. *Wheeler,* 15 *Q. B.,* 442. *Parsons on Cont.,* 329 *n.*) In this case no objection is pretended to have been made for months after delivery. On the authority of *Sprague* v. *Blake* (20 *Wend.,* 63), there was an acceptance in this case at the time of the delivery. (*See also Dodsley* v. *Vadey,* 12 *Ad. & Ell.,* 634 ; *Story on Con.,* § 792, *p.* 869.) The question of acceptance under the statute of frauds is identical with that at common law in respect to the right of objection on the score of quantity or quality. (*Outwater* v. *Dodge,* 6 *Wend.,* 397. *Smith* v. *Surman,* 9 *B. & Cr.,* 561, 577. *Norman* v. *Phillips,* 14 *M. & W.,* 277. *Howe* v. *Palmer,* 3 *B. & Ald.,* 321. *Hanson* v. *Armitage,* 5 *B. & Ald.,* 557. *Acebal* v. *Levy,* 10 *Bing.,* 376. *Cunlife* v. *Harrison,* 6 *Exch.,* 903. *Curtis* v. *Paugh,* 10 *Q. B.,* 111. *Story on Con.,* § 790.) If the cheese had been accepted, evidence of its quality was irrelevant. If it be urged that there was no binding acceptance of the cheese made after the 1st of October,

because the defendant, as he alleges, made no contract for cheese manufactured after that time, the objection is one merely to quantity. It is not denied that the defendant purchased the cheese up to October 1st, but he claims to repudiate as an excess what was made after that time. The claim is merely that *more* cheese has been delivered than was bought.. It is well settled that an objection on the score of *quantity* must be taken before acceptance. (*Story on Con.*, § 790. 2 *Kent's Com., 8th ed., note* 1, *and cases cited. See cases above cited.*) Quantity and quality are classed in the same category, and an acceptance is conclusive on the right to object to either. It may be said that the acceptance was without knowledge of the excess. If the plaintiff was bound to communicate the fact of the cheese being made after October 1st, the defendant's remedy, if he has one against him, is on a warranty or in fraud. And neither warranty nor fraud is alleged in the answer. If the plaintiff was not bound to communicate the fact, then the defendant's acceptance of the cheese is final. An inspection of the cheese would have disclosed the fact if there were late made cheese. Or if he, the defendant, were not satisfied in respect to the quantity, he could have put himself on inquiry. The fact was one which he could easily ascertain. In no event could the defendant avail himself of this objection without a special count in his answer, claiming recoupment on the ground of the cheese having been made after the 1st of October.

*By the Court*, MARVIN, J. The action was brought to recover a balance claimed to be owing and due to the plaintiff for cheese sold at a price stipulated, and delivered in 1857.

There are exceptions to the findings of facts by the referee. I have carefully read the evidence. There was evidence tending to prove all the material facts found

by the referee, and there was evidence upon some of the issues tending to prove the contrary. The findings are not so against evidence as to justify the court in interfering. The conclusion of law from the facts found was correct. This brings us to the exceptions taken during the trial to the admission and rejection of evidence.

The contract as claimed by the plaintiff was a sale of the plaintiff's cheese then made, and all to be made by the 20th of October following, and to be delivered after the cheese was a month old, at Dunkirk. The defendant claimed that the contract only included the cheese made up to the first of October. The contract price was nine cents a pound. The plaintiff quit making cheese the 10th or 12th of October. He delivered the cheese made up to that time at the warehouse of Abell in Dunkirk, and to Abell, who was an agent of defendant for receiving cheese. The last delivery was Nov. 27, 1857,— 33 boxes, 3,087 pounds. The value of this, at the contract price, was $277.88. The plaintiff had previously delivered 8,157 pounds ; this had been paid for, and also $100, as the plaintiff conceded, on account of the 3,087 pounds of cheese, before this action commenced, leaving as the plaintiff claimed $177.83 still due. The action was commenced in December, 1858. The defendant claimed that he had paid the plaintiff in full, or rather that he had settled with the plaintiff matters in dispute between them growing out of the contract and its performance, and had paid him in full under circumstances that would amount to an accord and satisfaction.

The evidence upon this question was heard, and the referee found against the positions of the defendant.

The cheese was delivered by the plaintiff to Abell at his warehouse in Dunkirk and shipped by him to the commission agents of the defendant in New York, for sale. The cheese was in boxes. It does not appear that the cheese was examined, either by the defendant or

Abell, at the time it was delivered to Abell, or before it was shipped to New York.

The defendant saw the cheese that was made and in the dairy in August, about the time he made the contract to purchase.

The defendant then offered to prove that the cheese in question was not of a merchantable quality, and that it was not made during the time mentioned in the contract. Such proof was objected to, and the evidence was excluded, and the defendant excepted.

The defendant also offered to prove what was said in a conversation between the plaintiff and defendant, in August, 1858, respecting the quality of the cheese. Objection was made ; the referee received the evidence with the understanding that he should, before making a final decision of the cause, decide whether it was admissible ; that the party against whom the question was decided might except. The referee finally sustained the objection, and the defendant excepted. The evidence then given conditionally was : The plaintiff said the cheese was not cured as it should be [should have been], he was sorry it was not cured more. The defendant claimed [in the conversation] that all the thirty-three boxes were made after the contract expired [meaning Oct. 1st] ; he said he thought not more than one-half of them.

The defendant also offered to prove what constituted Mr. Abell's agency, and how far it extended in receiving the cheese. This was objected to and disposed of the same manner as the objections above. The evidence taken and finally rejected, was from the defendant : "I employed him to receive, weigh and forward cheese to its destination. His authority was merely to receive such cheese as I sent to him."

The defendant, in substance, offered to prove that the defendant got information from New York that the cheese was not merchantable and could not be sold ; that it was

Pease *v.* Copp.

not cured; that such information was received in December, 1857. The evidence was, upon objection, rejected, and the defendant excepted.

The defendant offered to prove that he communicated to the plaintiff that the cheese was not good, and that the plaintiff said, "go on and pay the note and plaintiff would do what was right about the cheese;" that the parties were talking about the price of the cheese. Excluded, upon objection, and the defendant excepted. There were several other offers of evidence to show the agency of the consignee in New York; the character of the cheese, as to quality, made late in the fall; the value of cheese made after October 1st. The evidence was rejected, and the defendant excepted. It is not necessary to state the case further. The referee reports in favor of the plaintiff for the value of all the cheese delivered at Abell's and forwarded to New York, at the contract price. The counsel for the defendant makes the point that the referee erred in finding that there was any acceptance of and liability for the cheese in question by the defendant at the contract price, and insists upon the exceptions. Also in finding that the plaintiff was not fully paid, &c.

The referee found that by the contract the cheese was to be delivered in Dunkirk at the warehouse of Abell. That Abell was a forwarding merchant and the agent of the defendant to receive the delivery of the cheese; that the plaintiff delivered the cheese, and Abell received it. These facts being so, the referee, in rejecting the evidence of the quality of the cheese, held that such evidence, in the absence of fraud, could not affect the plaintiff's right to recover. The contract was executory. The cheese was delivered at the place desigated by the contract, and there was a man there who received it. I do not think it very material to ascertain what precise authority Abell had from the defendant touching any inspection of the cheese; he had authority, as all the evidence shows, to receive the cheese, weigh and forward it —

Pease *v.* Copp.

such cheese as the defendant sent to him. This is from the evidence of the defendant which the referee finally excluded. I refer to it as showing that Abell's authority was sufficient, as the defendant states it; and rejecting this evidence could not change the case. It is true that the defendant says Abell's authority was merely to receive such cheese as he sent to him. By the contract the cheese was to be delivered at the warehouse of Abell, and it was the duty of the defendant to be there in person to receive it, or have an agent there for that purpose. The defendant was a large purchaser of cheese to be delivered at Abell's warehouse. He did not attend there in person, but Abell received cheese brought there, and forwarded it. In this case he received the cheese and sent it to New York to the agents of the defendant, for sale. I have no doubt, within all the authorities, that it must be held that there was a delivery and acceptance of the cheese. It was an article that could be inspected, and its quality ascertained, and this should have been done at Abell's warehouse. The defendant had no right himself or by his agent to take the plaintiff's cheese and send it to New York, and then on finding that it was not of the quality the contract called for, take the position that there had been no delivery, or that the title had not passed. In this case there was no proof that the defendant ever offered to return the cheese. But I have no doubt he must be held to have accepted it when it was delivered at the place specified in the contract and there received by Abell, his agent, and forwarded to New York. It was then too late to raise any question as to its quality, as it was an article that could have been readily inspected and its quality ascertained.

The judgment must be affirmed.

Judgment affirmed.

[ERIE GENERAL TERM, February, 1860. *Greene, Marvin* and *Davis,* Justices.]